# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROLLING MEADOW RANCH, INC., | |
| Plaintiff, | 8:19CV39 |
| v. | |
| PRO AG MANAGEMENT, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Pro Ag Management's ("Pro Ag") Motion for Partial Summary Judgment (Filing No. 43). Pro Ag seeks summary judgment on claims raised in plaintiff Rolling Meadow Ranch, Inc.'s ("Rolling Meadow") Complaint (Filing No. 1-A) and on its own counterclaims (Filing No. 6) against Rolling Meadow. Rolling Meadow has requested a hearing (Filing No. 52). For the reasons stated below, Pro Ag's motion is denied without a hearing.

## I. BACKGROUND

### A. Parties

Rolling Meadow, a Florida corporation, owns approximately 2,500 acres of "agricultural real estate" in Lincoln County, Nebraska (the "farm"). Rolling Meadow leased the farm to Pro Ag from 2016 to 2018 under various written leases. In its brief, Rolling Meadow expends great energy discussing the nature of Pro Ag's business structure when it leased the farm.

In early 2016, Rolling Meadow sent Pro Ag's Chief Financial Officer Ben Hendrix ("Hendrix") a lease agreement ("2016 lease") which identified Hendrix's company as "Pro Ag Management, a Colorado partnership." Pro Ag maintains no such partnership exists. According to Pro Ag, Hendrix emailed Rolling Meadow proposed amendments for that lease (Filing No. 45-2), including one to amend the name of the tenant to what Pro Ag

contends is the company's proper name—"Progressive Agricultural Management, a Colorado *corporation*."[1] (Emphasis added).

Rolling Meadow denies it ever received Hendrix's proposed changes. On February 2, 2016, Hendrix signed the 2016 lease as is. The parties entered into two subsequent written leases in 2017 and 2018 ("2018 lease"),[2] both which listed the tenant as Pro Ag Management, a Colorado partnership.

Rolling Meadow now contends Pro Ag failed to notify Rolling Meadow "that the name of the tenant was ever incorrect or mistaken." Rolling Meadow asserts "for liability purposes it executes lease agreements with partnerships." In short, Rolling Meadow alleges Pro Ag fraudulently represented its business structure. The argument is irrelevant to the Court's resolution of the present motion and the Court will not consider it further here.

B.     **The 2018 Lease**

The 2018 lease is at issue in this case. Rolling Meadow leased the farm to Pro Ag to grow crops such as popcorn. The 2018 lease required Pro Ag to operate "in accordance with the principles of good farming" and "best husbandry practices." Pro Ag agreed to "prevent noxious weeds from going to seed" and to destroy them.

Two provisions of the 2018 lease granted Rolling Meadow a right to a lien on Pro Ag's crops. Paragraph seven of the 2018 lease granted Rolling Meadow "a lien on all crops produced by [Pro Ag] for the value of any annual rent and any other obligations of Pro Ag

---

[1] Pro Ag also says the company has since changed its name to "Prestige Land Company, Inc."

[2] According to Rolling Meadow, all three renditions of the lease were similar but had "different pay rates" and "payment timing."

hereunder." Paragraph fifteen[3] of the 2018 lease provided Rolling Meadow "shall have a lien upon all crops, goods, chattels, or personal property of any description belonging to [Pro Ag] . . . as a security for rent due" if Pro Ag failed to make "any rental payments."

The 2018 lease also required Rolling Meadow to "cooperate and execute Popcorn contracts on three varieties with Con Agra"[4] and Pro Ag to grow popcorn as directed by Conagra "so, as not to jeopardize [Rolling Meadow's] good standing with Con Agra." Rolling Meadow further agreed to "forward all proceeds and bonuses from the contracts" to Pro Ag. Thus, under the lease, Pro Ag would grow the popcorn for Conagra, Conagra would pay the proceeds to Rolling Meadow, and Rolling Meadow would forward those proceeds to Pro Ag.

### C. The Noxious Weeds and the Liens

Rolling Meadow alleges over the course of the time Pro Ag leased the farm, Pro Ag "failed to maintain and grow crops on the farm in accordance with the industry standards of good farming and the principles of good husbandry" and did not prevent "noxious weeds from going to seed and destroy" them. Rolling Meadow asserts that as a result, Palmer Amaranth, a noxious weed, infested the farm at a level "so severe that [Rolling Meadow] lost its good standing with Conagra due to the necessary remediation actions that needed to occur."

In August 2018, Rolling Meadow filed a Uniform Commercial Code Financing Statement ("financing statement") with the Nebraska Secretary of State against Pro Ag as the debtor and listing as collateral "all crops, . . . goods, chattels, or personal property" on the farm. Rolling Meadow asserts it filed the financing statement "as security against [Pro

---

[3]The 2018 lease includes two paragraphs numbered fifteen. This is the second paragraph fifteen.

[4]Though neither the parties nor the leases elaborate on this point, the Court assumes they are referring to Conagra Brands, Inc. ("Conagra"), a packaged food producer.

3

Ag]'s failure to maintain the [farm] in accordance with the industry standard" resulting in the Palmer Amaranth outbreak.

Pro Ag sold its 2018 popcorn crop to Conagra, and Conagra paid Rolling Meadow the proceeds. Specifically, Conagra paid Rolling Meadow $278,432.42 on December 6, 2018, and $221,952.27 on May 6, 2019.[5] Conagra also paid Rolling Meadow $2,606.04 for Pro Ag's unused popcorn seed (collectively, "Conagra proceeds").

After Conagra paid Rolling Meadow, Rolling Meadow did not forward Pro Ag any of the Conagra proceeds because, according to Rolling Meadow, they are "subject to the UCC lien against Pro Ag." In Rolling Meadow's view, Pro Ag is obligated to pay Rolling Meadow's damages from eradicating the Palmer Amaranth. Rolling Meadow says it spent approximately $180,000 in 2018 and $255,000 in 2019 remediating the Palmer Amaranth and estimates it will take at least another $1,000,000 and an additional four years to complete remediation. Pro Ag denies it is responsible for the noxious-weed outbreak or owes Rolling Meadow any money for it.

### D. This Lawsuit

On December 28, 2018, Rolling Meadow sued Pro Ag in the District Court of Lincoln County, Nebraska. On January 25, 2019, Pro Ag removed (Filing No. 1) the case to this Court alleging diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a) and 1446.[6]

In its complaint, Rolling Meadow asserts claims for breach of contract, negligence, and setoff. Relevant here, Rolling Meadow alleges Pro Ag breached and negligently

---

[5]Pro Ag asserts Conagra paid Rolling Meadow $500,384.69, which Rolling Meadow "disputes" asserting Conagra actually paid $500,384.54. This fifteen-cent difference is immaterial. In any case, it appears Pro Ag's math is correct.

[6]Despite their disagreement over Pro Ag's business structure, the parties seemingly agree Pro Ag is a Colorado citizen, Rolling Meadow is a Florida citizen, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

4

performed under the leases in numerous ways, such as those relating to the Palmer Amaranth, causing both past and future damages. Rolling Meadow also asserts it is entitled to "a setoff" under the 2018 lease "against any damages suffered by [it] due to the default and breach of contract and/or negligence of [Pro Ag]." Specifically, Rolling Meadow seeks to use the Conagra proceeds subject to its financing statement to setoff its damages in this case.[7]

On February 1, 2019, Pro Ag filed an answer and counterclaim against Rolling Meadow asserting claims for (1) breach of contract, (2) restitution and unjust enrichment, and (3) conversion. Pertinent to the present motion, Pro Ag alleges Rolling Meadow breached the 2018 lease and has exercised "an unauthorized and wrongful act of dominion" over Pro Ag's property by failing to forward the Conagra proceeds.

Pro Ag now seeks partial summary judgment on Rolling Meadow's setoff claim and its own counterclaims for breach of contract and conversion. Pro Ag contends it must prevail on these claims as a matter of law because Rolling Meadow has inappropriately attempted to setoff its unliquidated claims for damages (from the Palmer Amaranth) with a liquidated amount (the Conagra proceeds).

## II. DISCUSSION

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if there is enough evidence 'that a reasonable jury could return a verdict for the nonmoving party.'" *Farver*

---

[7]The Court notes it peculiar that Rolling Meadow has asserted setoff as a standalone cause of action given that setoff is typically a "counterdemand which a defendant holds against a plaintiff, arising out of a transaction extrinsic of the plaintiff's cause of action." *M & D Masonry, Inc. v. Univ. Sur. Co.*, 572 N.W.2d 408, 413-14 (Neb. 1997) (explaining generally the common-law doctrines of setoff and recoupment). Because Pro Ag has not raised this issue, however, the Court will not concern itself with it further at this point.

*v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing the absence of a genuine dispute of material fact. *See id.* If the movant satisfies that burden, the nonmoving party must "set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *Moore v. Martin*, 854 F.3d 1021, 1025 (8th Cir. 2017) (quoting *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988)). The Court views the facts and "makes all reasonable inferences 'in the light most favorable to the nonmoving party.'" *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018) (quoting *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1066 (8th Cir. 2017)).

### B. Rolling Meadow's Setoff

The parties agree Nebraska law governs this diversity action. *See Perry v. Johnston*, 641 F.3d 953, 955 (8th Cir. 2011) ("*Erie* [*R. Co. v. Tompkins*, 304 U.S. 64 (1938),] mandates that a federal court sitting in diversity apply the substantive law of the forum State."). Pro Ag's motion stands on its proposition that, under Nebraska law, a party cannot setoff an unliquidated claim with a liquidated claim without some independent legal authority. As framed by the parties, the success of Pro Ag's motion depends on whether (1) Nebraska law does generally bar the setoff in this case and (2) the 2018 lease nonetheless authorizes Rolling Meadow's attempted setoff. As explained below, the Court finds a genuine dispute of material fact regarding the latter.

#### 1. Liquidated Claims

The Court will first consider Pro Ag's contention that Nebraska law generally bars Rolling Meadow's attempted setoff because a party cannot setoff an unliquidated claim with a liquidated claim as a matter of law. Pro Ag draws that principle from a garnishment case, *Davis Erection Co. v. Jorgensen*, 534 N.W.2d 746, 751 (Neb. 1995). In *Davis*, the Nebraska Supreme Court recognized the common-law principle that, as a general matter, an "unliquidated claim cannot be set off against a liquidated claim." *Id.*

6

Rolling Meadow does not challenge whether the principle from *Davis* applies in this case, so the Court will assume it does. Rolling Meadow instead argues its setoff survives because its claims are liquidated.

Determining whether a claim is liquidated requires a "two-pronged inquiry." *Fitzgerald v. Cmty. Redev. Corp.*, 811 N.W.2d 178, 203 (Neb. 2012). For a claim to be liquidated, there must be "no reasonable controversy as to both the amount due and the [party]'s right to recover." *Brook Valley Ltd. P'ship v. Mut. of Omaha Bank*, 825 N.W.2d 779, 792 (Neb. 2013).

Rolling Meadow argues the Court should find its claims liquidated because (1) its past damages from the Palmer Amaranth "are liquidated and certain" and "permit a reasonable estimate the total amount of [Rolling Meadow's] damages related to remediation of the Farm" and (2) "its contractually permitted lien and" financing statement clearly entitle it to the Conagra proceeds. Rolling Meadow's argument is unconvincing.

Rolling Meadow's calculation of its damages is only an "estimate" and Pro Ag disputes it owes any amount to Rolling Meadow. *See Fitzgerald*, 811 N.W.2d at 203. Thus, Rolling Meadow's claims are unliquidated because they fail both prongs of the liquidated-damages inquiry.

Conversely, Pro Ag's claim to the Conagra proceeds is liquidated because the parties do not dispute (1) the amount of the Conagra proceeds or (2) that but for Rolling Meadow's setoff, the 2018 lease requires Rolling Meadow to forward the Conagra proceeds to Pro Ag. Accordingly, Rolling Meadow is attempting to setoff its unliquidated claims with a liquidated debt.

## 2. Authority under the 2018 Lease

As explained by Pro Ag, under these circumstances, Rolling Meadow "can only setoff if permitted by the 2018 lease." The Courts finds a genuine dispute exists on that factual issue.

In interpreting the 2018 lease, the Court "must first determine, as a matter of law, whether the [lease] is ambiguous." *McEwen v. Neb. State Coll. Sys.*, 936 N.W.2d 786, 790 (Neb. 2019). "An instrument is ambiguous if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Wintroub v. Nationstar Mortg. LLC*, 927 N.W.2d 19, 24 (Neb. 2019).

Although both parties insist the 2018 lease is unambiguous, they interpret the 2018 lease differently. Rolling Meadow points to paragraphs seven and fifteen of the 2018 lease as authorizing its lien and withholding of the Conagra proceeds "as a setoff to damages."

Paragraph seven provides Rolling Meadow "is entitled to a lien on all crops produced by [Pro Ag] for the value of any annual rent and any other unpaid obligations of [Pro Ag] hereunder." Paragraph fifteen contemplates Pro Ag's default "[i]f any rental payments required by [the 2018 lease] are not paid when due." Paragraph fifteen states in the event of rent-payment default by Pro Ag, Rolling Meadow

> shall have a lien upon all crops, goods, chattels, or personal property of any description belonging to [Pro Ag] which are [on the farm], as a security for rent due . . . ; and [Pro Ag] hereby grants to [Rolling Meadow] a security interest in all such crops and personal property placed [on the farm] for such purpose. . . . If the default has not been remedied within the cure period, the crops will automatically become the property of [Rolling Meadow] and such crops may be sold by [Rolling Meadow] to offset a portion or all of the rent due during the lease term or damages incurred. . . . All rights and remedies of [Rolling Meadow] under this Lease shall be cumulative, and none shall exclude any other right or remedy at law.

Although Rolling Meadow does little to explain how paragraph fifteen applies under these circumstances, Rolling Meadow argues paragraph seven authorizes it to keep the

8

Conagra proceeds by exercising a setoff for Pro Ag's "unpaid obligations" under the 2018 lease. In Rolling Meadow's view, Pro Ag is obligated to pay damages under the 2018 lease for "breach[ing] the [2018] Lease, [and] fail[ing] to return the Farm in the same condition as it was before Pro Ag's . . . tenancy." In other words, Rolling Meadow considers Pro Ag's failures and refusal to pay the cost to remediate the Palmer Amaranth "unpaid obligation[s]" under the 2018 lease.

Pro Ag reads more narrowly Rolling Meadow's authority under the 2018 lease. Pro Ag argues paragraph seven limits Rolling Meadow's "setoff and lien rights to rent and other payment obligations arising under the [2018] lease." Put another way, Pro Ag argues paragraph seven only applies if Rolling Meadow can identify some "monetary obligation imposed on [Pro Ag] by the 2018 Lease that has gone 'unpaid.'" As for paragraph fifteen, Pro Ag asserts that provision contemplates Rolling Meadow's remedies only where Pro Ag fails to pay rent, which has not happened here.

While Pro Ag's view of paragraph fifteen is compelling, the Court need not decide the breadth of that provision because the Court finds reasonable both parties' interpretations of paragraph seven. That is, paragraph seven is ambiguous.

The fact that parties suggest opposing meanings of a disputed phrase alone "does not necessarily compel the conclusion that the [phrase] is ambiguous." *McEwen*, 936 N.W.2d at 790. But here, the 2018 lease does not define "any other unpaid obligations," and it is not clear what that term covers. As Pro Ag has suggested, it could mean any unpaid "monetary" obligations under the 2018 lease, which does burden Pro Ag with monetary obligations other than rent, such as costs for certain amounts of annual water usage. However, the Court also finds reasonable Rolling Meadow's interpretation that paragraph seven authorizes Rolling Meadow's lien and setoff based on Pro Ag's alleged failings for which Rolling Meadow contends Pro Ag is liable for under the 2018 lease.

The Court "is not free to rewrite [the 2018 lease] or to speculate as to terms of the [lease] which the parties have not seen fit to include." *Facilities Cost Mgmt. Grp., LLC v. Otoe Cty. Sch. Dist. 66-0111*, 868 N.W.2d 67, 77-78 (Neb. 2015). The Court instead finds ambiguous the breadth of Rolling Meadow's authority under paragraph seven. Therefore, a genuine dispute of material fact exists over the meaning of "any other unpaid obligations" and "the jury, not the court, should determine the issue from all the facts and circumstances." *Id.* at 78; *see also Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.*, 702 N.W.2d 355, 367 (Neb. 2005) (explaining that if an instrument is ambiguous "the meaning of the ambiguous contract [becomes] a question of fact for the fact finder").

### C. Pro Ag's Counterclaims

Pro Ag's counterclaims that Rolling Meadow breached the 2018 lease and exercised unlawful dominion over the Conagra proceeds similarly turn on whether Rolling Meadow's setoff claim fails as a matter of law at this stage. Because the Court has answered that question in the negative, Pro Ag's motion on its counterclaims must also be denied.

Based on the foregoing, Pro Ag's Motion for Partial Summary Judgment (Filing No. 43) and Rolling Meadow's request for a hearing (Filing No. 52) are both denied.

IT IS SO ORDERED.

Dated this 23rd day of March 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge